**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

NANCY KANE, individually on
behalf of herself and all others similarly
situated,

        Plaintiff,

v.

VI-JON, LLC,

        Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff Nancy Kane (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

        1.    This is a class action lawsuit regarding the deceptive and misleading business practices of Vi-Jon, LLC (the "Defendant" or the "Company") in connection with its manufacturing, marketing, and sales of its Magnesium Citrate Saline Laxative products (hereinafter the "Affected Products").[1]

---

[1] The Affected Products include, but are not limited to, Best Choice 10oz Lemon Mag Citrate; Best Choice 10oz Cherry Citrate; Best Choice 10oz Grape Citrate; Care One 10oz Lemon Mag Cit; Care One 10oz Cherry Cit; Cariba 10oz Lemon Mag Citrate; Cruz Blanc 10oz Lemon Mag Cit; CVS 10oz Lemon Mag Cit; CVS 10oz Lemon Mag Cit; CVS 10oz Cherry Citrate; CVS 10oz CLR Grape Citrate; Discount Drug Mart 10oz Lemon Mag Citrate; Equaline 10oz Lemon Mag Cit; Equaline 10oz Cherry Citrate; Equate 10oz Lemon Mag Cit SRP; Equate 10oz Cherry Citrate SRP; Equate 10oz Grape Mag Cit SRP; Exchange Select 10oz Lemon Mag Cit; Family Wellness 10oz Cherry Citrate; Family Wellness 10oz Cherry Citrate; Good Sense 10oz Lemon Mag Cit; Good Sense 10oz Cherry Citrate; Harris Teeter 10oz Lemon Mag Citrate; HEB 10oz Lemon Mag Citrate; HEB 10oz Cherry Citrate; HEB 10oz Grape Mag Citrate; Health Mart 10oz Lemon Mag Cit; Health Mart 10oz Cherry Cit; Kroger 10oz Lemon Mag Citrate; Kroger 10oz Lemon Mag Citrate; Kroger 10oz Grape Citrate; Leader 10oz Lemon Mag Cit; Leader 10oz Cherry Cit; Leader 10oz Grape Mag Cit; Major 10oz Lemon Mag Citrate; Meijer 10oz Lemon Mag Cit; Meijer 10oz Cherry Citrate; Premier Value 10oz Low Sod Lem Cit; Premier Value 10oz Cherry Cit; Publix 10oz Lemon Mag Cit; Publix 10oz Cherry Citrate; Quality Choice 10oz Lemon Mag Cit; Quality Choice 10oz Cherry Citrate; Rexall 10oz Lemon Mag Citrate; Rexall 10oz Cherry Cit; Rexall 10oz Grape Mag Cit; Rite Aid 10oz Lemon Citrate; Rite Aid 10oz Cherry

2.      Defendant improperly, deceptively, and misleadingly labeled and marketed its Affected Products to consumers, like Plaintiff, by failing to disclose to consumers on its packaging that the Affected Products may contain *Gluconacetobacter liquefaciens*, a harmful bacteria.

## PARTIES

### I.      Plaintiff

3.      Plaintiff Nancy Kane is a citizen and resident of Queens, New York.  During the applicable statute of limitations period, Plaintiff purchased CVS-branded 10 oz. Cherry Citrate which was subject to the recall during the recall period from a CVS located in Rockaway Beach, NY during the Class Period.  Plaintiff unfortunately ingested the product.

4.      When purchasing the Products, Plaintiff reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the Products were properly manufactured, free from defects, and safe for their intended use. Plaintiff relied on these representations and warranties when deciding to purchase the Products, and these representations and warranties were part of the basis of the bargain.  Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Affected Products containing *Gluconacetobacter liquefaciens*, Plaintiff would have purchased the Affected Product. The Affected Product obtained by Plaintiff was worthless because it contained *Gluconacetobacter liquefaciens*, a harmful bacteria. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

---

Citrate; Signature Care 10oz Lemon Mag Cit; Signature Care, 10oz Cherry Cit; Sound Body 10oz Lemon Mag Cit; Sunmark 10oz Lemon Mag Cit; Sunmark 10oz Cherry Cit; Swan 10oz Lemon Mag Citrate; Swan 10oz Cherry Citrate; TopCare 10oz Lemon Mag Citrate; TopCare 10oz Cherry Cit; Up&Up 10oz Lemon Mag Cit; Walgreens 10oz Lemon Mag Cit; Walgreens 10oz Cherry Cit; and Walgreens 10oz Grape Mag Cit.

## II.      Defendant

5.      Defendant, Vi-Jon, LLC, is a Delaware corporation with its principal place of business in St. Louis, Missouri.  Vi-Jon LLC is one of the largest manufacturers of over-the-counter drug products in the United States and responsible for producing some of the most popular over-the-counter drug products at frequented pharmacies, including the Affected Products.

6.      The sole member of Defendant is Vi-Jon Holdings, Inc., a Delaware corporation with its principal place of business in St. Louis, Missouri.

7.      Defendant manufactures, markets, advertises, and distributes the Affected Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Affected Products.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, and Defendant Vi-Jon, LLC is a citizen of Delaware and Missouri; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

10.      Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

3

## FACTUAL BACKGROUND

11.     *Gluconacetobacter liquefaciens* is a gram-negative bacterium that grows best in sucrose-rich mediums such as sugarcane sap.[2]  Due to this, *Gluconacetobacter liquefaciens* occurs mainly in sugary, acidic, and alcoholic habitats, and can develop during the manufacturing process of fruit juice and citrus products, like the Affected Products.[3]

12.     *Gluconacetobacter liquefaciens* is recognized to be a dangerous substance. It is particularly dangerous for immunocompromised individuals.[4]

13.     Recent research has confirmed that *Gluconacetobacter liquefaciens* ingestion can cause death to immunocompromised individuals.[5]

14.     Defendant's marketing, adverting campaign, and labeling do not disclose that the Affected Products may contain *Gluconacetobacter liquefaciens*.

15.     Consumers like Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from substances known to be harmful, including *Gluconacetobacter liquefaciens*.

16.     Plaintiff and those similarly situated (hereinafter "Class Members") likewise expected that Affected Products they purchased would not contain or risk containing any substances known to be harmful, especially where Defendant gives no indication or warning that the Affected Products of containing such harmful substances.

---

[2]R.K. Hommel, Encyclopedia of Food Microbiology, Science Direct, (Second Edition), 2014, accessible at: https://www.sciencedirect.com/topics/agricultural-and-biological-sciences/gluconacetobacter (last visited August 17, 2022).

[3]*Id.*

[4]Maxwell Olenski, et al., A Case of Gluconacetobacter liquefaciens Bacteremia Associated with Sugarcane Juice Ingestion, Journal of Microbiology and Infectious Diseases, 2020; 10(1):62-67, accessible at: https://dergipark.org.tr/en/download/article-file/1005787#:~:text=Gluconacetobacter%20liquefaciens%20is%20a%20Gram,was%20associated%20with%20seve re%20immunodeficiency. (last visited August 17, 2022).

[5]Maxwell Olenski, et al., A Case of Gluconacetobacter liquefaciens Bacteremia Associated with Sugarcane Juice Ingestion, Journal of Microbiology and Infectious Diseases, 2020; 10(1):62-67, accessible at: https://dergipark.org.tr/en/download/article-file/1005787#:~:text=Gluconacetobacter%20liquefaciens%20is%20a%20Gram,was%20associated%20with%20seve re%20immunodeficiency (last visited August 17, 2022).

17.     These omissions led Plaintiff and Class Members to believe they were not purchasing a product containing harmful substances, such as *Gluconacetobacter liquefaciens*.

18.     Plaintiff and Class Members expectations were broken when Defendant recently conducted microbial testing of its manufactured magnesium citrate saline products and uncovered the presence of *Gluconacetobacter liquefaciens* in the Affected Products.[6]

19.     Despite making representations as to the health benefits of the Affected Products, and specifically listing both the active and inactive ingredients of the Affected Products on the labeling, Defendant failed to disclose that the Affected Products contain or may be contaminated with *Gluconacetobacter liquefaciens* on its packaging or in its marketing.

20.     On June 22, 2022, Defendant first disclosed the presence of *Gluconacetobacter liquefaciens* in its magnesium citrate laxative products and began a recall of all CVS-branded Lemon flavored 10 FL. OZ magnesium citrate laxative products.[7]

21.     Defendant's June 22, 2022 announcement did not indicate when the presence of *Gluconacetobacter liquefaciens* was first discovered by the Company or when (or by who) the testing of the Affected Products was conducted.

22.     On July 15, 2022, Defendant revised its recall and expanded it to encompass all Lemon-flavored 10 fl. oz. magnesium citrate laxative products within expiry.[8]

23.     On July 25, 2022, Defendant expanded its recall *again* to include all lots of Cherry-, Grape-, and Lemon-flavored magnesium citrate laxative products.[9]

---

[6]https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/vi-jon-llc-expands-voluntary-nationwide-recall-all-flavors-and-lots-within-expiry-magnesium-citrate (last visited August 17, 2022).
[7]https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/vi-jon-llc-issues-voluntary-nationwide-recall-cvs-magnesium-citrate-saline-laxative-oral-solution (last visited August 17, 2022).
[8]https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/vi-jon-llc-expands-voluntary-nationwide-recall-magnesium-citrate-saline-laxative-oral-solution-lemon (last visited August 17, 2022).
[9]https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/vi-jon-llc-expands-voluntary-nationwide-recall-all-flavors-and-lots-within-expiry-magnesium-citrate (last visited August 17, 2022).

24.     Defendant had a duty to ensure that its customers were timely notified of the recall.

25.     Defendant failed to ensure that its customers were timely notified of the recall.

26.     Defendant had, and continues to have, an obligation to ensure that customers are aware of the recall announcements and provides information relating to its recall efforts.

27.     Defendant has not adequately notified purchasers of its recall announcements and failed to provide necessary information relating to its recall efforts to allow purchasers to (i) understand the process; and (ii) receive a refund.

28.     After Plaintiff learned that the product she purchased was covered by the recall, she contacted Defendant.  In addition to seeking information about the impacted products, she notified the Company of its inadequate recall efforts, mainly the lack of timely and noticeable communication with purchasers.  Defendant responded by informing her that she should have been aware of the recall since it was in the paper and on the news.  In Defendant's view, as conveyed to Plaintiff, it was "definitely put out there."    What's more, Defendant laid blame on any deficiencies in messaging about the recall was the blame of the retailer where the product was purchased – in Plaintiff's case, CVS – and said that CVS was responsible to notify her of the recall.

29.     A few representative examples of Defendant's lack of disclosure on the Affected Products are depicted below:



10

1112



[10] https://gray-kktv-prod.cdn.arcpublishing.com/resizer/yYE7MUza6N9us5vx_yna65WX4Kw=/1200x675/smart/filters:quality(85)/cloudfront-us-east-1.images.arcpublishing.com/gray/P63JANQ7KJAAZNUM7JK6MT6NYA.png (last visited August 17, 2022).

[11] https://i5.walmartimages.com/asr/fa0b63a1-5ffb-4f1e-bb54-57e539e2a6be.58f23bdf018ff676ce058b0440c51ac47.png?odnHeight=612&odnWidth=612&odnBg=FFFFFF (last visited August 17, 2022).

[12] https://i5.walmartimages.com/asr/0f6dd064-e061-494a-b1fd-c4581e21c757.1f4d71418186785cc37df01fb7896eda.png?odnHeight=612&odnWidth=612&odnBg=FFFFFF (last visited August 17, 2022).

7

13



14



---

13 https://m.media-amazon.com/images/I/61KwrOrNnAL.jpg (last visited August 17, 2022).
14 https://i5.peapod.com/c/10/10QB2.png (last visited August 17, 2022).

30.     The Affected Products' ingredients list of active and inactive ingredients is silent as to the potential presence of *Gluconacetobacter liquefaciens.*

31.     A reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful bacterium.

32.     Consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Affected Products.

33.     Reasonable consumers would not consider that Defendant's Affected Products contain, or may be contaminated with, *Gluconacetobacter liquefaciens*.

34.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Affected Products do contain or risk containing *Gluconacetobacter liquefaciens*, which threatens consumers' health, well-being, and even lives.  Nevertheless, Defendant does not list or mention *Gluconacetobacter liquefaciens* anywhere on the Affected Products' packaging or labeling.

35.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions concerning the safety and composition of the Affected Products when they purchased them.

36.     Plaintiff and Class Members would likely continue to trust Defendant's representations and purchase Defendant's products in the future if Defendant's products conform to Defendant's representations.

37.     Currently, Plaintiff and Class Members cannot rely on Defendant's representations as Plaintiff and Class Members lost the entire benefit of their bargain when they received magnesium citrate products contaminated with a bacterium that is associated with harm to consumers' health and lives, harms which are magnified for immunocompromised individuals.

38.     Defendant's Affected Products which did contain, or may have been contaminated with, *Gluconacetobacter liquefaciens* are not safe for human consumption and are entirely worthless.

39.     Alternatively, Plaintiff and Class members paid a price premium for the Affected Products based upon Defendant's health-conscious marketing and advertising campaign including its false and misleading representations and omissions on the Affected Products' labels.  Given that Plaintiff and Class Members paid a premium for the Affected Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

40.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Affected Products.  In addition, those who ingested the Affected Products based on Defendant's misrepresentations and omissions, such as Plaintiff, exposed themselves to the harmful bacterium *Gluconacetobacter liquefaciens* which will increase risk of serious medical complications and calls for ongoing medical monitoring provided by Defendant.

41.     As a result of Defendant's actions, or inaction, Plaintiff and Class Members ingested product containing microbial contamination.

42.     As a proximate result of Plaintiff and Class Members' consumption of contaminated product, plaintiff and Class Members have an increased risk of serious medical complications.

43.     Defendant has caused Plaintiff and Class Members to be reasonably apprehensive about developing serious illness attributable to ingesting Defendant's product containing microbial contamination.

44.     As a direct and proximate result of the negligence of Defendant, Plaintiff and Class members must secure ongoing diagnostic, curative, and preventative medical care.

45.     Due to the exposure to microbial contamination caused by Defendant, the Company should be required to provide funding for a medical monitoring process.

46.     Plaintiff brings this action against Defendant on behalf of herself and Class members who purchased the Affected Products during the applicable statute of limitations period (the "Class Period").

47.     Defendant manufactures, markets, advertises, and sells magnesium citrate oral laxatives to treat constipation.  Specifically, magnesium citrate causes the intestine to release water into the stool, which softens the stool and relieves constipation and irregularity.[15]

48.     The Affected Products' labeling recommends that the Affected Products be used for relief of occasional constipation (irregularity) and that it generally produces bowel movement in thirty minutes to six hours.[16]  An example of these representations on the labeling of a few of the Affected Products is depicted below:

---

[15] https://www.webmd.com/diet/health-benefits-magnesium-citrate#1 (last visited August 17, 2022).
[16] https://www.dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=e562bf42-b9e1-4ea8-b880-7bec4dd620b4&type=display (last visited August 17, 2022).

[17]



**Zoomed In**



[17]  https://www.fda.gov/files/styles/recall_image_small/public/Image%2020_2.jpg?itok=jGCNCnXK   (last   visited August 17, 2022).



**Zoomed In**



---

[18] https://www.fda.gov/files/styles/recall_image_small/public/Image%2025_3.jpg?itok=mEe3b1Fv (last visited August 17, 2022).



**Zoomed In**



[19]https://www.wric.com/wp-content/uploads/sites/74/2022/06/BETTER-IMAGE_1.jpg   (last visited August 17, 2022).

49.     The two key active ingredients in magnesium citrate laxative products sold in the United States are magnesium citrate and saline laxative.[20]

50.     Sales of magnesium citrate have steadily increased as consumers have become vigilant and health conscious regarding their regular bowel movements.  With that in mind, the magnesium citrate market was valued at 4.05 million USD in 2021 and is expected to grow with a compound annual growth rate of 3.59% from 2021 to 2027.[21]

51.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies such as Defendant have capitalized on consumers' desire for laxative products, and consumers' willingness to pay a premium for these products.

52.     Consumers lack the ability, and are not expected nor required, to independently verify whether a product contains unsafe substances, such as *Gluconacetobacter liquefaciens*, especially at the point of sale.

53.     Consumers, including Plaintiff and Class Members, rely on Defendant to accurately report the ingredients and contents of the Affected Products, in addition to any risks of contamination, on the Affected Products' packaging or labels.

54.     Defendant has complete control of overseeing the manufacturing of its products, including the Affected Products.

55.     Defendant had the ability to prevent the *Gluconacetobacter liquefaciens* contamination of the Affected Products.

---

[20] https://stopandshop.com/groceries/health-beauty/digestion-nausea/fiber-laxatives/careone-magnesium-citrate-saline-laxative-lemon-flavor-10-oz-btl.html (last visited August 17, 2022).
[21] https://www.marketwatch.com/press-release/magnesium-citrate-market-size-2022-2027-global-industry-growth-share-demand-insights-trends-key-players-geographical-segmentation-key-findings-gross-margin-and-revenue-forecast-research-2022-06-01 (last visited August 17, 2022).

56.     The Affected Products' packaging does not disclose the presence of *Gluconacetobacter liquefaciens*.  Indeed, *Gluconacetobacter liquefaciens* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Gluconacetobacter liquefaciens* in the Affected Products.  This leads reasonable consumers to believe the Affected Products do not contain, nor is it at risk of containing, dangerous components like *Gluconacetobacter liquefaciens*.

57.     Despite the Affected Products' labeling and ingredient listing, Defendant omits that the Affected Products contain, or are at risk of containing, *Gluconacetobacter liquefaciens*.

58.     Defendant manufactures over-the-counter magnesium citrate products for large retailers.  For example, Defendant manufactures magnesium citrate products for CVS, Rite Aid, Walgreens, Walmart, Target, Kroger, and Publix, amongst many others.

59.     Defendant's large distribution reach makes the recent revelation of *Gluconacetobacter liquefaciens* in Defendant's Affected Products particularly concerning.

60.     Of even greater concern, Defendant has received several reports from consumers that suffered an adverse reaction from consumption of the Affected Products.[22]  Defendant, as of August 4, 2022, was in the process of investigating these reports.[23]

61.     To date, Defendant has issued three voluntary recalls of the Affected Products.[24]

62.     The voluntary recalls sparked the Food and Drug Administration (the "FDA"), to publish the Defendant's study and recalls.  The FDA also assigned the recalls with a Class One designation, which is the FDA's most serious recall classification as it warns that the use of the affected product could cause serious adverse health consequences.[25]

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

63.     Defendant is in the unique and superior position of knowing the ingredients, raw materials, manufacturing processes, and quality testing used in the production of its Affected Products, as well as the risks associated with the ingredients, raw materials, and processes, such as the risk of *Gluconacetobacter liquefaciens* contamination.

64.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production of its Affected Products, while such knowledge is not readily available to consumers like Plaintiff and Class Members.

65.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Affected Products.

66.     Defendant's false, misleading, and deceptive omissions regarding the Affected Products containing *Gluconacetobacter liquefaciens* are likely to continue to deceive and mislead reasonable consumers and the public.

67.     Defendant's misrepresentations and omissions are material and intentional because consumers are understandably concerned with what they ingest into their bodies.  Consumers, such as Plaintiff and the Class Members, were influenced by the marketing and advertising campaign, the Affected Products labels, and the listed ingredients.

68.     Inherent in the relationship between Defendant and its customers, Defendant understood that if it had not omitted the presence of *Gluconacetobacter liquefaciens*, then Plaintiff and the Class would not have purchased the Affected Products at all.

69.     Through its deceptive advertising and labeling, Defendant has violated, inter alia, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of

17

such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

70.     Consumers rely on marketing and information in making purchasing decisions.

71.     By omitting that the Affected Products includes *Gluconacetobacter liquefaciens* on the labels of the Affected Products throughout the Class Period, Defendant's omissions are material to consumers since they would not purchase laxative with a harmful bacterium.

72.     Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

73.     Plaintiff and the Class Members reasonably relied to its detriment on Defendant's misleading representation and omission.

74.     Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

75.     In making the false, misleading, and deceptive representation and omission described herein, Defendant or should have known that its consumers would pay a premium for a product marketed as having the ability to provide laxative relief without the bacterium *Gluconacetobacter liquefaciens* as compared to products not so marketed.

76.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a.     Paid a sum of money for Affected Products that did not match Defendant's representations;

b.      Paid a premium price for Affected Products that did not match Defendant's representations;

c.      Were deprived of the benefit of the bargain because the purchased Affected Products were different from what Defendant warranted; and

d.      Were deprived of the benefit of the bargain because the purchased Affected Products had less value than what Defendant represented.

77.     Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Affected Products and purchased Defendant's Affected Products based thereon.

78.     Had Plaintiff and Class Members known the truth about the Affected Products, i.e., that it contains a harmful bacterium (i.e., *Gluconacetobacter liquefaciens*), they would not have purchased it at any price, or, at minimum would have paid less for it.

79.     Instead, Plaintiff and the Class Members all paid money for the Affected Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Affected Products due to Defendant's misrepresentation and omission.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Affected Products than they would have had they known the truth about the Affected Products.

80.     Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

81.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.

Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

82.     The Class is defined as all consumers who purchased the Affected Products anywhere in the United States during the Class Period.

83.     Finally, Plaintiff seeks certification of a subclass of individuals who consumed Defendant's Affected Products and were exposed to *Gluconacetobacter liquefaciens* (the "Injured Subclass").

84.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

85.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

86.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

87.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

> a.   Whether Defendant adequately disclosed contents of and risks associated with the Affected Products;
>
> b.   Whether the Affected Products contained *Gluconacetobacter liquefaciens;*
>
> c.   Whether Defendant adequately tested the Affected Products for contaminants;

d.   Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Affected Products;

e.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Affected Products;

f.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Affected Products;

g.   Whether Defendant's false and misleading statements and omissions concerning its Affected Products were likely to deceive the public; and

h.   Whether Plaintiff and the Class are entitled to money damages and equitable relief.

88.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Affected Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

89.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

90.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual

conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

91.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

j.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

k.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

l.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

m.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

n.    This class action will assure uniformity of decisions among Class Members;

o.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

p.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

q.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Affected Products.

92.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

### CAUSES OF ACTION

### COUNT I
### VIOLATION OF NEW YORK GBL § 349
#### (on behalf of Plaintiff and New York Subclass Members)

93.  Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

94.  New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

95.  The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Affected Products.

96.  There is no adequate remedy at law.

97.     Defendant misleadingly, inaccurately, and deceptively advertise and market their Affected Products to consumers.

98.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Affected Products have *Gluconacetobacter liquefaciens* —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Affected Products and to use the Affected Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

99.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Affected Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

100.    Defendant's advertising and Affected Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Affected Products.

101.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

102.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT II
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

103.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

104.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

105.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

106.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning the Affected Products' safety and fail to disclose that the Affected Products contain *Gluconacetobacter liquefaciens*.

107.    Plaintiff and the New York Subclass Members have been injured as they relied upon the labeling, packaging, and advertising and purchased Affected Products that were mislabeled, dangerous, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

108.    Defendant's advertising, packaging, and Affected Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Affected Products.

109.    Defendant made its untrue and/or misleading statements and representations while having the unique power and opportunity to verify the veracity of their representations.

110.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

111.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Affected Products' packaging and labeling.

112.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Affected Products were and continue to be exposed to Defendant's material misrepresentations.

113.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>COUNT III</u>
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

114.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

115.    Defendant provided Plaintiff and Class Members with an express warranty in the form of a commitment that the Affected Products are safe for use and do not contain *Gluconacetobacter liquefaciens*.

116.    Defendant omitted that the Affected Products contain a known bacterium from its ingredients labeling. This omission would lead reasonable consumers did not contain a known

bacterium, when in fact, the Affected Products were contaminated with *Gluconacetobacter liquefaciens* as stated herein.

117.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

118.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

119.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Affected Products.

120.    Defendant knowingly breached the express warranties by including *Gluconacetobacter liquefaciens* in the Affected Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Affected Products.

121.    Within a reasonable time after it knew or should have known, Defendant did not change the Affected Products' label to include *Gluconacetobacter liquefaciens* in the ingredients list.

122.    Defendant thereby breached the following state warranty laws:

r.      Code of Ala. § 7-2-313;

s.      Alaska Stat. § 45.02.313;

t.      A.R.S. § 47-2313;

u.      A.C.A. § 4-2-313;

v.      Cal. Comm. Code § 2313;

w.      Colo. Rev. Stat. § 4-2-313;

x.      Conn. Gen. Stat. § 42a-2-313;

y.       6 Del. C. § 2-313;

z.       D.C. Code § 28:2-313;

aa.      Fla. Stat. § 672.313;

bb.      O.C.G.A. § 11-2-313;

cc.      H.R.S. § 490:2-313;

dd.      Idaho Code § 28-2-313;

ee.      810 I.L.C.S. 5/2-313;

ff.      Ind. Code § 26-1-2-313;

gg.      Iowa Code § 554.2313;

hh.      K.S.A. § 84-2-313;

ii.      K.R.S. § 355.2-313;

jj.      11 M.R.S. § 2-313;

kk.      Md. Commercial Law Code Ann. § 2-313;

ll.      106 Mass. Gen. Laws Ann. § 2-313;

mm.      M.C.L.S. § 440.2313;

nn.      Minn. Stat. § 336.2-313;

oo.      Miss. Code Ann. § 75-2-313;

pp.      R.S. Mo. § 400.2-313;

qq.      Mont. Code Anno. § 30-2-313;

rr.      Neb. Rev. Stat. § 2-313;

ss.      Nev. Rev. Stat. Ann. § 104.2313;

tt.      R.S.A. 382-A:2-313;

uu.      N.J. Stat. Ann. § 12A:2-313;

vv.     N.M. Stat. Ann. § 55-2-313;

ww.    N.Y. U.C.C. Law § 2-313;

xx.     N.C. Gen. Stat. § 25-2-313;

yy.     N.D. Cent. Code § 41-02-30;

zz.     II. O.R.C. Ann. § 1302.26;

aaa.    12A Okl. St. § 2-313;

bbb.    Or. Rev. Stat. § 72-3130;

ccc.    13 Pa. Rev. Stat. § 72-3130;

ddd.    R.I. Gen. Laws § 6A-2-313;

eee.    S.C. Code Ann. § 36-2-313;

fff.    S.D. Codified Laws, § 57A-2-313;

ggg.    Tenn. Code Ann. § 47-2-313;

hhh.    Tex. Bus. & Com. Code § 2.313;

iii.    Utah Code Ann. § 70A-2-313;

jjj.    9A V.S.A. § 2-313;

kkk.    Va. Code Ann. § 59.1-504.2;

lll.    Wash. Rev. Code Ann. § 6A.2-313;

mmm. W. Va. Code § 46-2-313;

nnn.    Wis. Stat. § 402.313; and

ooo.    Wyo. Stat. § 34.1-2-313.

123.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Affected Products, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendant as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to cure inadequate recall and notification processes, correct their manufacturing and marketing practices and to comply with the relevant consumer protection statutes;

(c) An Order requiring Defendant to establish a medical monitoring program for Plaintiff and the class to monitor individuals' health and diagnose at an early stage any ailments associated with ingest to *Gluconacetobacter liquefaciens*;

(d) Awarding monetary damages and treble damages;

(e) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(f) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(g) Awarding punitive damages;

(h) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(i) Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: August 18, 2022

**LEVI & KORSINSKY, LLP**

By: s/ *Mark S. Reich*
Mark S. Reich
Courtney E. Maccarone
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
cmaccarone@zlk.com

*Counsel for Plaintiff*